# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔠𝔬𝔲𝔯𝔱 𝔬𝔣 𝔉𝔢𝔡𝔢𝔯𝔞𝔩 𝔠𝔩𝔞𝔦𝔪𝔰

No. 12-79 T
April 26, 2013
PUBLISHED

---

**CLEAN FUEL LLC,**

***Plaintiff*,**

**v.**

**UNITED STATES OF AMERICA,**

***Defendant*.**

---

American Recovery and Reinvestment
Tax Act; Subject matter jurisdiction;
RCFC 12(b)(1); Consequential damages;
Lost profits; Tucker Act; "Money-
mandating" source of law

---

*Maurice A. Bellan*, McGuireWoods LLP, Washington, DC, for plaintiff.

*Michael J. Ronickher*, Tax Division, United States Department of Justice, Washington,
DC, for defendant.

## OPINION AND ORDER

**Block, Judge.**

Section 1603 of the American Recovery and Reinvestment Tax Act of 2009 (AARTA),
Pub. L. 111-5, 123 Stat. 115, provides, "Upon application, the Secretary of the Treasury shall,
subject to the requirements of this section, provide a grant to each person who places in service
specified energy property to reimburse such person" in an amount equal to "the applicable
percentage basis of such property." Put simply, when certain "energy property" is put to use to
produce clean energy, § 1603(a) requires the federal government to reimburse a portion of the
cost of such property.

This case arises because plaintiff, a developer of biodiesel platforms, sought to take
advantage of § 1603(a). For reasons not relevant here, the Treasury Department found that it
was not required to give plaintiff the requested reimbursement grants. Plaintiff brought this suit
to recover the amount of the grants, as well as "consequential damages, special damages, or other
damages that result[ed] as a consequence[] of the Government's violation of its statutory and
regulatory mandates."

This court has had occasion before to consider § 1603(a). In *AARA Energy Co. v. United
States*, 97 Fed. Cl. 12 (2011), this court held that § 1603(a) was a "money-mandating" statute
that could give rise to a claim in this court under the Tucker Act. *ARRA Energy*, 97 Fed. Cl. at
19-22. The court based its conclusion primarily on the fact that the statute required the payment

of grants subject only to the ministerial discretion involved in determining whether the statutory scheme's other requirements were met. *Id.* at 20.

Neither party questions that decision in this case. Instead, defendant has filed a motion for partial dismissal, *see* Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RFCF), on the ground that this court has no jurisdiction over plaintiff's claims insofar as they request consequential damages. Defendant argues that although § 1603(a) is money-mandating, consequential damages are not within the mandate, and thus the statute cannot serve as the substantive law necessary to invoke the Tucker Act with respect to consequential damages.

Plaintiff disagrees. It argues that because § 1603(a) is money-mandating, the court has jurisdiction. In plaintiff's view, whether the court may award consequential damages is an issue to be decided on the merits. Essentially, plaintiff argues that if, as *AARA Energy* held, § 1603(a) is money-mandating, then it does not matter whether the money it mandates includes all the money plaintiff requests.

Thus, the question this motion presents is whether § 1603(a), which requires partial reimbursement for certain "energy property," can give rise to a claim for consequential damages resulting from the denial of such reimbursement. As explained below, because consequential damages are not included within the compensation § 1603(a) mandates, that statute cannot serve as the source of substantive law required for this court to exercise jurisdiction over claims for consequential damages. Accordingly, the court must grant defendant's motion.

## I. Facts

Plaintiff is a developer of biodiesel platforms. Compl. ¶ 25. On April 15, 2009, plaintiff purchased new and used assets for the purpose of creating biodiesel fuel. *Id.* ¶ 26. Using these assets, plaintiff created one renewable energy facility in Lakeland, Florida, and another one in Groveland, Florida. *Id.* ¶ 27. In December 2009, plaintiff purchased a generator set for each facility. *Id.* ¶¶ 30, 31, 47. The generator sets were placed in service in May 2010. *Id.* ¶¶ 33, 50.

In purchasing these generator sets and placing them into service, plaintiff expected to take advantage of ARRTA's "grant program" for renewable energy. As mentioned above, ARRTA's § 1603(a) requires the Secretary of the Treasury to provide "a grant to each person who places in service specified energy property to reimburse such person" in an amount equal to "the applicable percentage basis of such property." Plaintiff believes that the generator sets qualified as "specified energy property" under the complex statutory scheme. Accordingly, upon placing the generator sets in service, plaintiff submitted the required applications for reimbursement. Compl. ¶¶ 35-42, 52-59. But it was not to be. On January 6, 2011, the Department of the Treasury notified plaintiff that it had denied the Lakeland application. *Id.* ¶ 63. The other shoe fell just over two months later on March 12, 2011, when the Department notified plaintiff that it had also denied the Groveland application. *Id.* ¶ 64.

Plaintiff filed its complaint in this court of February 3, 2012. In each of its two counts (one for each denied application) plaintiff requests monetary relief in the amount of the reimbursement it claims to have been entitled to under § 1603. Plaintiff also requests "consequential damages, special damages, or other damages that result[ed] as a consequence[] of the Government's violation of its statutory and regulatory mandates." Specifically, plaintiff argues that as a result of the denial of its applications, it was unable to operate either facility in

2011, thus forfeiting the net income that each facility would have generated that year ($8,977,251, in the case of the Lakeland facility). Compl. ¶¶ 72, 78.

## II. Motion to Dismiss

Defendant answered plaintiff's complaint and filed this motion for partial dismissal under RCFC 12(b)(1). In its motion, defendant asks the court to dismiss plaintiff's claims insofar as those claims request the award of "consequential damages, special damages, or other damages that result[ed] as a consequence[] of the Government's violation of its statutory and regulatory mandates." Def.'s Mot. at 4. Defendant claims that such damages are not authorized by § 1603 and that therefore this court lacks jurisdiction to award them. *Id.* at 4-7.

Plaintiff asks the court to deny defendant's motion. Pl.'s Opp. at 13. Plaintiff argues that § 1603 is a money-mandating statute and has been held to be such by this court. *Id.* at 6-7 (citing *ARRA Energy*, 97 Fed. Cl. at 16, 17, 28). Plaintiff also argues that whether consequential damages can be awarded in this case is irrelevant to the threshold jurisdictional question and ought instead to be determined on the merits. *Id.* at 7-11.

In reply, defendant acknowledges that § 1603 is a money-mandating statute but denies that the compensation the statute mandates includes consequential damages. Def.'s Reply at 1-2. Defendant argues that plaintiff cannot "shoehorn its consequential damages claim into its claim for a specifically defined, statutorily mandated payment." *Id.* at 3.

For reasons explained more fully below, defendant is correct. The obligation to identify a money-mandating statute is an obligation to identify a statute that mandates the form of monetary compensation a plaintiff requests. When a plaintiff requests more than one form of damages, the court has jurisdiction with respect only to those claims for damages covered by the money-mandating statute. Because § 1603 cannot "fairly be interpreted" to mandate lost profits or other consequential damages, the court must grant defendant's motion.

## III. Discussion

The Tucker Act confers on this court jurisdiction of claims for damages not sounding in tort and arising out of, *inter alia*, federal statutes. 28 U.S.C. § 1491(a)(1).[1] But to invoke Tucker Act jurisdiction, a plaintiff must identify the "money-mandating" statute under which his claim arises. *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc). And a statute is "money-mandating" if it can "fairly be interpreted" as mandating the compensation the plaintiff seeks.[2] *United States v. Mitchell*, 463 U.S. 206, 216-17 (1983) (*Mitchell II*); *United States v. Testan*, 424 U.S. 392, 400 (1976).

---

[1] "The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, *or any Act of Congress* or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (emphasis added).

[2] Defendant wrongly asserts that, in assessing whether a statute is money-mandating, this court must construe the statute "strictly." The court must strictly construe the waiver of sovereign immunity itself (in this case, the Tucker Act), but the question with respect to the substantive

For purposes of this case, the key point is that the compensation the statute can "fairly be interpreted" as mandating must be the kind of compensation the plaintiff seeks. This court has no jurisdiction over a claim for one type of money damages if the "money-mandating" statute the plaintiff cites pertains only to a *different* type of money damages. "The crucial question is whether, *and to what extent*, Congress has consented to a monetary claim in this court." *Mitchell v. United States*, 664 F.2d 265, 270 (Ct. Cl. 1981) (en banc) (*Mitchell II*) (emphasis added), *aff'd*, 463 U.S. 206.

The Court of Claims decision in *Mitchell II* illustrates this. The case was on remand from the Supreme Court, which had held in *Mitchell I* that the trust established by the General Allotment Act, 25 U.S.C. §§ 331-54, did not give rise to a suit for mismanagement of Indian lands. *See United States v. Mitchell*, 445 U.S. 535, 546 (1980) (*Mitchell I*). In remanding the case, the Supreme Court had instructed the Court of Claims to consider other jurisdictional arguments. *Id.* at 546 n.7. Carefully considering the relevant statutes, the Court of Claims found that Congress had mandated "a restricted degree of compensation" for breach of trust duties. *Mitchell II*, 664 F.2d at 270-71. Specifically, the court found that it had jurisdiction to consider claims for (1) fall-off from income the Indian plaintiffs would have received but for the alleged breaches of trust, and (2) the value of property lost through the federal government's improper actions. *Id.* at 271.

However, the court *also* held that it *lacked* jurisdiction of claims for "other, consequential, indirect damages." *Id.* Specifically, the plaintiffs could not sue for "other types of damages or compensation: indirect or consequential business, economic, or personal damages due to the loss . . . of their property, or personal, psychological, or social harm experienced by the Indian owners or the tribe as a consequence of federal mismanagement of their property." *Id.* at 273-74. The court reasoned that such damages were not "included within the legislation [the] plaintiffs invoke." *Id.* at 274. Thus, while denying most of the defendant's motion to dismiss, the court did grant the motion in part. The money-mandating sources of law permitted jurisdiction not of claims for all money damages, but only of claims for "a restricted degree of compensation." *Id.* at 270-71.[3]

A few years later, in *Anderson v. United States*, 5 Cl. Ct. 573 (1984), the Court of Claims granted a partial motion to dismiss for lack of subject matter jurisdiction where some of the damages sought were not authorized by the money-mandating source of law. In that case,

---

source of law is whether it can "fairly be interpreted" as mandating compensation. *See United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472-73 (noting that the Tucker Act provides an "unequivocally expressed" waiver of sovereign immunity and that the "'fair interpretation' rule" governing money-mandating statues "demands a showing demonstrably lower than the standard for the initial waiver of sovereign immunity"). In this case, defendant's mistake makes no difference because, as explained below, § 1603(a) cannot "fairly be interpreted" as mandating consequential damages.

[3] In *Mitchell II*, the government appealed the portion of the Court of Claims decision finding jurisdiction, and the Supreme Court affirmed. *See Mitchell II*, 463 U.S. 206. The Supreme Court did not review the Court of Claims' decision insofar as it found no jurisdiction over certain claims for damages.

construction workers employed by the Department of Health and Human Services sought monetary damages for sick and annual leave, health and life insurance benefits, per diem allowances, and the rates of pay they would be entitled to as prevailing rate employees. 5 Cl. Ct. at 575. The defendant moved to dismiss the claims for leave and insurance benefits on the ground that such damages were not covered by the money mandating law the plaintiffs invoked. The court found that although such benefits were mandated for another type of worker, the plaintiffs could not claim that the law mandated such benefits for them. Accordingly, the court found that it was "without authority" to consider the plaintiffs' claims for those damages. *Id.* at 581.[4]

Here, as in *Mitchell II* and *Anderson*, some of the damages plaintiff seeks are not "included within the legislation" plaintiff invokes. *See Mitchell II*, 664 F.2d at 274. Although money-mandating, 1603(a) mandates only "a restricted degree of compensation"—namely "a grant . . . to reimburse" the cost of certain "energy property." The amount of that grant is to be equal to "the applicable percentage basis of such property." There is no provision, explicit or implicit, for any kind of consequential damages. In short, § 1603(a) cannot "fairly be interpreted" as mandating consequential damages. *LCM Energy Solutions v. United States*, 107 Fed. Cl. 770, 773-74 (2012) (holding that § 1603(a) cannot be "fairly interpreted" as mandating consequential damages).

Plaintiff does not argue otherwise, but instead contends *ARRA Energy* found jurisdiction even though the complaint in that case contained a request for consequential damages in addition to a request for the reimbursement grant. Pl.'s Opp. at 6 & n.1. But the *ARRA Energy* court simply noted the request for consequential damages in passing. *See ARRA Energy*, 97 Fed. Cl. at 16. It did not actually consider the jurisdictional issue raised by that request. The oversight is entirely understandable because the government did not move for dismissal based on the request

---

[4] Plaintiff's counsel ought to know better than to argue, speciously, that "[t]he Government would like the [c]ourt to sever [p]laintiff's consequential damages claim from the rest of [its] claims, but there is no precedence [sic] for dissecting a plaintiff's claim in this way on jurisdictional grounds." Pl.'s Opp. at 6. That is a blatant misstatement of the law. First, the Federal Circuit could not be more explicit: "This is not to say that there was jurisdiction over every aspect of the case or every contention advanced by appellants; *jurisdiction over the individual points has to be judged separately*." *Smithson v. United States*, 847 F.2d 791, 794 (Fed. Cir. 1988) (emphasis added). Second, *Mitchell II* and *Anderson* are clear examples of the court "dissecting" a plaintiff's claims, dismissing claims for certain damages for lack of jurisdiction, and exercising jurisdiction over claims for other damages. Third, even if the precise facts of this case are unusual, this court has found that it lacks jurisdiction over a portion of a plaintiff's claims in innumerable cases. *See, e.g.*, *Haas v. United States*, 107 Fed. Cl. 1, 5-6 (2012); *L.A. Ruiz Assoc., Inc. v. United States*, 94 Fed. Cl. 768, 772-72 (2010); *Laudes Corp. v. United States*, 84 Fed. Cl. 298, 312-14 (2008); *Ewer v. United States*, 64 Fed. Cl. 396, 399-402 (2005); *Am. Telecom Corp. v. United States*, 59 Fed. Cl. 467, 470-73 (2004); *Deponte Inv., Inc. v. United States*, 54 Fed. Cl. 112, 114-16 (2002); *Chaney v. United States*, 45 Fed. Cl. 309, 320 (1999). As *Smithson* and this court's cases make clear, not only is there precedent for this court "dissecting" a plaintiff's claim in adjudicating a motion to dismiss for lack of jurisdiction, the court is *required* to engage in such dissection. Plaintiff's contention to the contrary is, at best, careless.

for consequential damages.  Nor, as best this court can tell, did the parties argue the point.  This court does not construe the oversight in *ARRA Energy* as somehow trumping *Mitchell II* or *Anderson*.  Nor does the court construe the oversight to mean that a statute mandating only reimbursement for the cost of property somehow also mandates consequential damages for failure to grant that reimbursement.

Apparently sensing that § 1603(a) cannot "fairly be interpreted" as mandating consequential damages, plaintiff argues that whether consequential damages can be proven (*i.e.*, whether or not they are too speculative) goes to the merits, rather than to jurisdiction.  Pl.'s Opp. at 8-11.  That is true,[5] but it misses the point.  Regardless of how speculative consequential damages would be if this court were authorized to calculate them, the real problem for plaintiff is that the money-mandating source of law plaintiff invokes does not authorize *any* consequential damages.  Such damages are simply not within the "restricted degree of compensation" the money-mandating statute contemplates.  *See Mitchell II*, 664 F.2d at 270-71.  This, unlike the provability of consequential damages, goes to jurisdiction.  *LCM Energy Solutions*, 107 Fed. Cl. at 773-74; *see also id.*; *Anderson*, 5 Ct. Cl. at 581.

Because the only money-mandating source of law plaintiff cites does not mandate consequential damages, this court has no jurisdiction to consider plaintiff's claims for consequential damages.[6]  Insofar as plaintiff requests such damages, the court must grant defendant's motion for partial dismissal.

### IV. Conclusion

For the foregoing reasons, defendant's **MOTION** for partial dismissal for lack of subject matter jurisdiction is **GRANTED**.

### IT IS SO ORDERED.

s/ *Lawrence J. Block*

Lawrence J. Block
Judge

---

[5] Specifically, the merits of a claim for lost profits concern whether the plaintiff has established by a preponderance of the evidence that (1) the loss was the proximate result of the breach; (2) the loss of profits caused by the breach was within the contemplation of the parties because the loss was foreseeable or because the defaulting party had knowledge of special circumstances at the time of contracting, and (3) a sufficient basis exists for estimating the amount of lost profits with reasonable certainty.  *Energy Capital Corp. v. United States*, 302 F.3d 1315, 1324-25 (Fed. Cir. 2002) (citing *Chain Belt Co. v. United States*, 115 F. Supp. 701, 714 (Ct. Cl. 1953); Restatement (Second) of Contracts § 351(1) (1981); *see also Hadley v. Baxendale*, 9 Exch. 341, 156 Eng. Rep. 145 (1854).

[6] Plaintiff does not allege an implied contract based on ARRTA in its complaint.  The court expresses no opinion on whether it would have jurisdiction to consider a claim for consequential damages based on a theory of implied contract.